Mr. Werthlein, whenever you're ready. Good morning. Good case report, counsel. My name is Steve Werthlein. And I represent Corrections Officer Michael VanArnstdalen in reference to his Public Safety Officer benefit application. It is our position that the Director erred in denying his application and that in doing so the decision was arbitrary and capricious in that it was not based upon substantial evidence. Did you have something more in your introduction? No, ma'am. How can there not be substantial evidence if at least a number of the evaluations in the record supported what the board said, which is that he was not completely disabled? The problem arises when the Public Safety Officer benefits' own experts don't agree. The first expert that they used, the first medical expert, was early on in the process. And that doctor indicated that the claimant's condition would not improve. It would only deteriorate. After the hearing with the hearing officer, then and only then did the PSOB call in an expert witness to actually examine Sergeant VanArnstdalen. He examined him. Clearly, I don't have my memory on this, but I seem to recall that the records show that your client's expert, that his doctors, also referred to stress and depression as part of his injury. Yes, sir, they did. And as we all know, stress and depression and any type of psychological component is not the basis for the awarding of benefits under the PSOB Act. But if those opinions are based on criteria that are not available under the regulation, in other words, an injury that's based in part on depression or these type of mental incapabilities, then doesn't that reduce the credibility of the opinion as a whole? Or doesn't that go contrary to the regulations? I don't believe it does. If you can bifurcate, if you will, the psychological component from the physical component and only rely upon the physical aspects, then I think it is not a credibility issue. Let's say we bifurcate and let's say we were able to do that and we decide, okay, 10% goes to the psychological infirmities and 90% are physical. Don't you lose right there under the regulation? If that was all that Sergeant Van Arenstalen had, I can see that point. But that's not all he had. He had his orthopedic surgeon saying these are the conditions, these are the physical conditions that he has. And those physical conditions only render him permanently totally disabled from all forms of sustained renumerative employment and he has reached maximum medical improvement. But he also said that the standard that he was applying there was in light of his education and experience, correct? No, sir. That was Mr. Cody, the only vocational expert in this case. Show us the one that you're just referring to where he says his physical infirmities. It is found in the supplemental appendix at page 3334. And you will see where his attending orthopedic surgeon, in response to the first question, lists the physical conditions. Where's the supplemental appendix? We have an appendix here, right? Supplemental appendix is attached to the respondent's brief. The respondent's brief, okay. What page? Page 3333 and going through 34. Is this SA you have it? Yes, that's SA 3334. This is what we have. Yes, ma'am. That document is important for two reasons. One... Well, if it's very important, that's a problem because I can't read it, right? I mean, this is the copy we have. Yeah, right. So you might want to tell me what it says. Okay, what it says is the doctor is asked, what physical conditions are we dealing with? And the doctor indicates we're dealing with right knee, surgery, chronic pain, degenerative joint disease, left shoulder, labral tear, period. No depression, no psychological conditions whatsoever. The doctor has asked his opinion as to whether or not those conditions have reached maximum medical improvement. He says, yes, they have. He has asked whether or not those conditions have rendered... Read to us the last question, word for word, would you please? The very last question? Yeah, this is the one you're starting on, right? Question number one asks for what physical conditions. Question number two... And who fills in, who wrote in those different conditions? The doctor did. The doctor. Yes, sir. And then he has asked specific questions. And those are the questions that the PSOB... Yeah, but what are the specific questions? Okay. Which specific question supports the notion that he was not capable of gainful employment? Number two, is it your medical opinion that the medical conditions identified above are traumatic physical conditions of the body? Okay, but that doesn't establish... Caused by external force. That's important because that's what the POB requires you to show. Right, but what question and answer shows that he's not capable of gainful employment? Number five, is it your medical opinion that he has reached a level of maximum medical improvement as the physical injuries identified above? Yes. Number six, is it your medical opinion as a direct and proximate result of the injuries identified above that he is permanently and totally disabled from all forms of full or part-time gainful employment activities that actually is compensated or commonly is compensated? That is PSOB language that he has asked there. Number seven, is it your medical opinion the injuries identified were a substantial factor in bringing about his disability? Answer, yes. Are all the medical opinions that you have provided above to a reasonable degree of medical probability? Yes. So while you're at it, read number one because I'm unable to read that particular question. And I say this to all the parties involved. I mean, it's unacceptable to submit a record that looks like this. I mean, someone has got to go through and check the documents that you're submitting and make sure that they're going to copy well or not. It does us no good to not be able to read this. I couldn't agree with you more. Can you read then this first part here? Question number one, please list the physical conditions that you have diagnosed as line-of-duty injuries sustained by Corrections Officer Michael Van Ornstammen. The doctor wrote right knee surgery, chronic pain, DJD, degenerative joint disease, left shoulder labral tear. Those are all of the line-of-duty injuries. Can I just clarify what doctor? I thought we were talking about Dr. Dunn, who's the orthopedic surgeon. No, ma'am. We're talking about Dr. Fleishly or whatever. Okay. Okay. Well, I have that listed as one that said that. Yes. And there's obviously conflicting opinions and other opinions that said otherwise. So I guess we're back to where we started is why those conflicting opinions don't at least give us substantial evidence that he was not permanently disabled. Okay. Because I have found in representing public safety officers, predominantly what you have in non-fatal line-of-duty injuries is there's some psychological component involved. And it is difficult to get the doctors to separate that which can be the basis for compensability from that which is not. These people do not suffer these line-of-duty injuries like most people do in workers' compensation claims where they hurt their back lifting something. They get hurt going into a burning building when the rats are running out. They get hurt, as does corrections officer Van Arnsdalen, when he wades into the middle of a gang fight between two rival gangs in a prison. Probably knowing full well he's about to have both gangs turn on him and pummel him. And that's exactly what happened here. You make a good point, but it seems to be a point that the criteria ought to be revised. Do I think it should be? Absolutely, Your Honor. But we can't do that. Do I have the right to ask you to do that? No, I do not. Right. And so what we end up then with, I submit to you, is did the director have substantial evidence? I submit to you she did not. Why not? I mean, there are all sorts of medical opinions saying that he's capable of gainful employment. To what degree? The reports she relied upon are two. She relied upon the second independent medical evaluator that the PSOB employed in this claim. The first one, Dr. Elkins, said he's reached maximum medical improvement and he can do sedentary work. Set the bar, if you will. Before that, a file review had been done by the PSOB doctor, Dr. Ogden, I think his name is, who said his condition's not going to improve and he is capable of employment. After we have the hearing and after Dr. Elkins says he can do no more than sedentary work, we obtain the vocational report that you alluded to from Mr. Cody, in which he said that based upon Ogden and based upon Elkins, the two PSOB doctors in the can, if you will, at that time, he is permanently totally disabled. As you pointed out, he also said, I'm taking into consideration his education, his work experience. He held corrections officer Van Arenstam to a higher standard. He wasn't evaluating this individual in a vacuum. He says, you have to take into consideration that which the applicant brings to the table. And what he brings to the table is his work experience, his education, and even with that, he is still permanently totally disabled. And I would point out to you, that is the only- But the problem is that once you apply those criteria, you narrow the kind of jobs that he could have that would make him able to have gainful employment. I don't believe you do, Your Honor. He is saying that if you have a situation where you have come to the point where this is all this man can do, using the PSOB doctors, he can't do anything, even with what he knows how to do. What do you have to say about the functional capacity evaluation performed by Ms. Abinila? One, she comes back and she says he's able to do light-duty work. That's totally inconsistent with what the PSOBs and other doctors said. It's inconsistent, but it's evidence as well, correct? It's some evidence. Is it credible evidence? Well, the question is, is it substantial evidence? I don't believe it is substantial evidence, Your Honor. To be substantial evidence, it has to be credible evidence. You can have any kind of evidence, but it has to be credible evidence. She conducted a functional capacity evaluation. The report that you referred to is just solely based on an injured knee and shoulder. But here we have a report from an expert that goes to the precise question, whether there's any functional capacity in your client. And she said, yes, there is. He can do light work. Which is totally contrary to what Dr. Elkins, the PSOB's first IME doctor said. But that doesn't make it incredible. I mean, that doesn't make it incredible. The problem is, where we're reviewing a decision of a fact finder, if there's substantial evidence to support what the person found, we have to sustain it. And here, as Judge Rainey's pointing out to you, there is evidence from Abinella and others that supports the decision of the director here. And so it's not our job to weigh the evidence or to decide that the evidence should be discarded that supports the director's decision. And if that's the court's decision, then Sergeant Van Ornsteyn is going to go down fighting just like he did in that prison? Well, that's a problem. I think Congress considered this when they changed the regulation. Had the regulation not changed and taken away the notion that if the question is in balance that we find in favor of your client, then I think you'd have a better argument. But that's no longer in the equation here. I mean, Congress decided that. I couldn't agree with you more. Okay, well, I don't want to hear from the government. I'll give you back a minute if you'd like. Thank you. Good morning, and may it please the court. Substantial evidence supports I just want to reiterate Judge Reina's point that you should not be submitting something as an appendix, which is illegible. You have an obligation to review it and make sure that it can be read. I apologize, Your Honor. I did talk with the agency, and that was the best.  We did try to clear the appendix. But that was the best version we had. Well, the best version, you can have it retyped and try to get opposing counsel to agree that that's what it said. I mean, that's not an excuse for submitting something that's illegible. You're absolutely correct, Your Honor. But what did the director say about this checklist? I can't even read the name. What is the name? It's Dr. James Fleischle. Fleischle? Actually, if you turn to one more page, page 35, which also is not a very good copy, that's from the same doctor, Dr. James Fleischle. And under history of present illness, it actually says he suffers from post-traumatic stress syndrome as well and is disabled because of it. And so Dr. Fleischle was actually a doctor that purely found, based on the orthopedic condition, that Mr. Van Oostalen was totally disabled. And in fact, in the reply brief on pages 2 and 3, Mr. Van Oostalen actually specifically stated that he was not relying on Dr. Fleischle's report. But where are you reading from? Page 35 is just another. Yes, I apologize, Your Honor. It was underneath history of present illness. And it's the third sentence down. He suffers from post-traumatic stress syndrome as well and is disabled because of it. And so this was another doctor who, although from the claimant stated that he was totally disabled, it also was based on a psychological condition. And again, in their reply brief on pages 2 and 3, Mr. Van Oostalen actually stated that he wasn't relying on Dr. Fleischle's report because he had mentioned psychological conditions. It strikes me odd that you have the individuals that this act is supposed to assist. If they're killed in action, that's one thing. But if they're not killed in action and they're injured as a result of a gang fight in a prison, now they're injured, there's got to be a stress factor in there somewhere. How do we discount that? Or how is one of these individuals ever going to be able to obtain assistance post the amendment of the act? If there's any showing whatsoever of post-traumatic stress or any type of psychological adverse results that come from the incident, how do we deal with this? It just seems to me that you'll be able to get up here almost in every case and win. It strikes me as odd that that's not what the act was designed to do. You're right, Your Honor. It is something, though, where it has to be based on the physical evidence component of it. Mr. Werthelin's argument was that perhaps you could bifurcate some of these medical opinions, except here in this record there was no evidence that 80% was based on the left shoulder and 20% on the right knee and vice versa. But the evidence he pointed to showed that 100% of his physical infirmities were preventing him from working, from any type of employment. I believe that the doctor's report he was referring to was Dr. Dunn, and that was back in 2005. And so there is a matter of recency here, too, where, for instance, the Bureau of Doctors, Dr. Elkin's report was in 2011, Dr. Paul actually applied twice in 2014. Wouldn't you want to apply the report that's closest to the incident? Well, not necessarily, because here, under 28 CFR 32.5, the Bureau had the authority to go out and get other medical opinions to ascertain the condition of Mr. Vannert-Stahlen. And so here, I would argue that recency to the opinion, the director's determination in 2015, is actually more helpful to Mr. Vannert-Stahlen than in 2005. And you do have here... Well, maybe between that period of time is when all of the psychological dilemmas arose. Well, but you also have, with Dr. Elkins and Dr. Paul, purely looking at the orthopedic standpoint, where they determined that he was not totally disabled, and that he was capable of sedentary and light employment. And so you do have two instances where those doctors were not looking at the psychological standpoint, determined that Mr. Vannert-Stahlen could work. Along with Ms. Avenilla, with her functional capacity assessment, she determined that Mr. Vannert-Stahlen was capable of employment. And the director weighed all of that evidence. And in fact, Mr. Vannert-Stahlen had argued that she had not considered Mr. Rushmore's functional capacity assessment or the second opinion of Dr. Nunnery. And in our supplemental appendix on page 11, those are listed in the evidence log for the different evidence that the director considered. Where does the ruling out of depression and PTSD come from? Is that the statute or the regulation? That comes from the regulation, and that's specifically at 32.6. Is that cited in your brief or quoted? It is, and also the director heard it. Where is it in your brief? In our brief, I believe we had mentioned that stress and psychological conditions were excluded. I believe that we referred to the director's determination. Where is the director quoted? In the director's decision, she explains it at supplemental appendix 3, and so that's at page 3 of her determination. And she went through the regulations at 28 CFR 32.3, where it's explained that injury means a traumatic physical wound directly and proximately caused by external force, but does not include, and I'm reading directly from the regulation, but does not include any condition of the body caused or occasioned by stress or strain. And then further within regulation 32.3, it states that stress or strain includes physical stress or strain, mental stress or strain, post-traumatic stress disorder, and depression. And so the director, when she was examining the evidence, properly excluded any claim for disability based on either post-traumatic stress disorder or strain or anxiety. Has it been argued that the regulation is inconsistent with the statute? No, not to my knowledge, Your Honor. Or here? Well, no, in any context. I don't believe so. I think in Harrison that this court saw last term, I believe that a question came up about post-traumatic stress disorder, but the court upheld the board's determination. I don't know if I'm answering your question. Well, did we address the regulation, the validity of the regulation in that case? No. Okay. Okay. And here, the director did apply the regulations in effect at the time of her determination, which was in 2015, and determined again, based on all the evidence before her, that three doctors, Dr. Uchgen, I believe is how you say his name, Elkins, and Dr. Paul, as well as Ms. Avenella, determined that he was not totally disabled. So there might be a question of whether the regulation is consistent with the statute, but it wasn't raised here. It was not raised here, and then in addition, the statute has a few definitions, but for instance, it refers to under 42 U.S.C. 3796B, it defines catastrophic injury as that meaning an injury at the direct and proximate consequences of which permanently prevent an individual from performing any gainful work. And within the actual definitions within that subchapter, the regulations flesh out the rest of the definitions. So there might be a question as to whether the regulation goes too far. I don't believe there is, but I also don't think this would be the case for it, because that was not argued in the briefs. And then in addition, Congress had amended these regulations in 2013, and I believe as far back as 2006, I could be wrong, stress restraint had been removed from being a compensable injury. So when I read that, when I read on the change to the act that caused the change to the regulation, it seemed to me that you could look at this two ways. That what Congress is saying is you can't look at PTSD as the sole cause of the disability. But I wasn't too sure that it said that any time you find a stress-related disorder, you know, part of this overall physical disability or in connection with or part of, that the individual is to be denied benefits. I know we can't bifurcate the evidence, but if maybe Congress was trying to separate this out and say if you have a disability that's based solely on PTSD, then that does not qualify. But somehow it appears to have been interpreted to mean that if you have any type, you know, a minutia of stress, and it just seems to me that if you're a fireman or a policeman or responding to a terrorist attack, you're going to come out of there with a bit of stress. And somebody's going to say you have some stress, and I can relate that to your inability to work. I'm not too sure that that's a question, but do you, well, let me phrase it as a question. Does a regulation create a per se rule that if there's any type of stress related in these cases, if there's any type of stress factor related, then that the officer is not eligible for benefits under the Act? I don't quite know how to answer your question, Your Honor. I do know that, for instance, with the regulations when they were amended, it now includes heart attacks and things that could also possibly come from the stress or strain. At least in this instance, we do have a record where there was nothing clear that a certain percentage could be, at least from the evidence Mr. Van Oxtollen presented, that a certain amount of the evidence could be attributed just to stress or strain or even to the physical disability. And so, at least on the record before us, we have an instance where there's substantial evidence supporting the director's determination. I think what Judge Raine is suggesting is that, as in the veteran's context, that does the regulation cover a situation where there is physical injury and the PTSD is secondary to the physical injury? In other words, that it results from the physical injury. And here, I do believe the regulations are consistent with saying it has to be a catastrophic injury that is directly or approximately caused. The injury, whatever it is, is directly or approximately caused by whatever the, in this case, the correctional officer suffered. And here, the catastrophic injury that Mr. Van Oxtollen suffered, which is not in dispute, and the director, it's never been in dispute as to whether he was injured in the line of duty or that he's permanently disabled. The question is just total disability. But here, the catastrophic injury was the two or three juvenile inmates roughing him up in the hallway and hurting his left shoulder and right knee. And we don't have evidence in this record, at least, that the catastrophic injury was PTSD from that encounter. I think the statute uses the phrase personal injury, and the statute doesn't go further than that. Say, personal injury, A, physical injury, B, not, no stress-related injury. Yes, the statute does at 3796 say direct and approximate results of a personal injury sustained in the line of duty. It doesn't say that personal injury does not include any type of stress factors. That's right. But here, again, we do not have anything in this record to indicate that necessarily from that encounter on, I believe it was December 10, 2004, that the injury was, that he didn't go to the hospital for stress or strain. He went to the hospital because he hurt his left shoulder and right knee. And at least in the evidence before this court, there are three doctors, as I mentioned, and one functional capacity assessment report from Ms. Avenilla that support the director's determination of the finding that he was not totally disabled. And again, it's not disputed that he's permanently disabled from these injuries, but the question is total disability, and there isn't anything in the record to support that. What is the language, again, that rules out depression and PTSD? Yes, Your Honor. Is that page three of the opinion? Yes. So it's in the regulations. It's in the definition section of the regulations, and that's 28 CFR. It's not on the page here? No, and I believe the director in her decision had, so in footnotes six, seven, and eight, she cited to the regulations where the definitions are. So those sites are actually to 28 CFR 32.3, and when you go through the regulation. And what does the regulation say? So the regulation says under, and these aren't numbered because they're just definitions, but injury means a traumatic physical wound or a traumatized physical condition of the body directly and proximately caused by external force. And I can read through the resolution. So how does it exclude? And then it goes to, but does not include, the first one is any occupational disease, and the second is any condition of the body caused or occasioned by stress or strain. And then further in the definitional section, stress or strain is defined as stress or strain includes physical stress or strain, mental stress or strain, post-traumatic stress disorder, and depression. And I believe I'm out of time. Doesn't that refer to if you have a situation where the entire disability is alleged to be based on stress or strain? It seems to be talking about a physical condition that's caused by stress or strain rather than stress or strain, which is the result of a physical condition. I think I would agree with you, your honor. You do agree? Yes. So that's a problem here, isn't it? Because his physical condition led to the PTSD and the depression. But here, the injury that occurred was the physical condition. And we also have something here where in the reply brief, at least on pages two through four, Mr. Bernard Stalin was abandoning any reference even to doctors that had referred to the psychological conditions in recognition that it has to be based on the physical injury. And moreover, in some of the doctors' opinions that Mr. Bernard Stalin submitted… I'm going to read the regulation, the way you quoted it. I'm not sure the regulation says that. It says stress or strain that causes physical injury is not included. So if he had PTSD and that caused a physical problem, that would not be included. Clear enough. But I'm not sure that it's clear that stress or strain resulting from a physical injury isn't to be taken into account. I think, again, at least with what we have here, and I want to answer your question, and I think I'm just not working myself out of trying to answer it. But my reading of the regulations, so the injury does not include any occupational disease. I imagine that might be something like carpal tunnel syndrome. Well, let's do a hypothetical. He loses a leg, someone loses a leg as a result of an injury in the line of duty, and that that causes PTSD. Is that a compensable injury? I don't believe so, Your Honor. Because? Because, so if it was just purely the claim of PTSD, then that would be excluded under the regulations. What language of the regulation excludes it? With the definition of injury where it excludes any condition of the body caused or occasioned by stress or strain. The stress or strain didn't cause the loss of the leg. The loss of the leg caused the stress or strain. Right, and under the regulations, it would be compensable if he was permanently and totally disabled because of the loss of his leg. Including the PTSD that flowed from it. That would not be a consideration that the board would consider in whether he was permanently and totally disabled. Under these regulations, the director had to apply them as written and, again, did weigh the evidence, did look at the various doctor's reports that Mr. Van Arnstallen submitted. Some of the reports that he'd submitted said he is disabled from being his former occupation as a correctional officer. And that's not a standard that the director can necessarily use because just if you can no longer be a correctional officer, is it possible that you could do other work? But here, this record does show that there is substantial evidence from the three doctors and the functional capacity assessment that he was not totally disabled. And the question is not permanent disability, but total disability. And those four individuals found that he could work. Thank you. Thank you very much. Mr. Whitman, do you have a final comment? Two minutes. Very briefly, to come back to you, Your Honor. A couple years ago, I represented a first responder who was on the roof of the Pentagon on 9-11. What he saw floating past him from the water being thrown onto that building, the curtain came down. Nothing but psychological, not a scratch on his body. Was he entitled to PSOB benefits under the law? No, he's not because he had no contemporaneous physical injury. It's a crying shame, but that's what it is. But when we come back to a situation where the attending orthopedic surgeon for Sergeant Van Ornstalen, contemporaneous with the second IME report from the PSOB, contemporaneous with the functional capacity evaluation of the physical therapist, says that solely as to the physical conditions, he is permanently, totally disabled, I submit to you it's a matter of quantity versus quality. Substantial evidence needs to be quality evidence. And here, the quality evidence comes from the attending orthopedic surgeon who says, purely for the physical conditions, he is permanently, totally disabled. Meanwhile, you've got the PSOB, doctor number two, saying he can do light-duty work. Well, apparently, Mr. Van Ornstalen went to Lourdes and got the cure because the PSOB's first doctor says he can do nothing more than sedentary work. And so now the quality, if you will, of the PSOB's evidence contradicts itself. What does the record show here about the source of his depression and PTSD? It is secondary to the physical injuries in the claim. Who addressed the source of the depression and the PTSD? The doctors make reference to it in passing, basically. But they don't tie it to the physical injury directly. As an officer of the court, I can't stand before you and say, no, they didn't. It's there. It's running on a parallel track, if you will, to the physical conditions. And we have had a discussion about this at length here. And it's inconceivable to me that public safety officers who suffer a catastrophic injury don't have some I'd be amazed if they didn't have some sort of psychological impact upon their life. That's what I've got.